**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS B. MCCAMMON,** | CASE NO. 1:17-cv-01694-CCC-GBC |
| Plaintiff, | (JUDGE CONNER) |
| v. | (MAGISTRATE JUDGE COHN) |
| **NANCY A. BERRYHILL,**<br>Acting Commissioner of the Social Security<br>Administration, | REPORT AND RECOMMENDATION TO<br>GRANT PLAINTIFF'S APPEAL |
| Defendant. | |

## <u>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S APPEAL</u>

This matter is before the undersigned United States Magistrate Judge for decision. Thomas B. McCammon ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends **GRANTING** Plaintiff's appeal and **REMANDING** the Commissioner's decision in this case.

## I.      Legal Standards of Review

To receive disability or supplemental security benefits under the Act, a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

> engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005). The process requires an Administrative Law Judge ("ALJ") to decide whether an applicant (1) is engaged in "substantial gainful activity;" (2) suffers from a "severe medically determinable physical or mental impairment;" (3) suffers from "an impairment(s) that meets or equals one" listed in the regulation's appendix; (4) has a residual functional capacity ("RFC") allowing for performance of "past relevant work;" and (5) can "make an adjustment to other work." Rutherford v. Barnhart, 399 F.3d 546, 551; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

If at any of the steps a determination exists that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four. See Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Johnson v. Commissioner

of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008); Sanfilippo v. Barnhart, 325 F.3d 391, 393 (3d Cir. 2003) (plenary review of legal questions in social security cases). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The Court may neither re-weigh the evidence nor substitute its judgment for that of the fact-finder. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The Court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if the Court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999) (citing 42 U.S.C. § 405(g)).

## II.   Procedural History

On January 13, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, 1382-1383 ("Act"), with

a last insured date of December 31, 2016,[1] and an amended alleged disability onset date August 31, 2011. (Tr. 11, 168). On August 13, 2013, the ALJ issued an unfavorable decision. (Tr. 8-27). Following the Appeals Council denial, dated September 9, 2014, a complaint was filed with the United States District Court on September 30, 2014. (Civil Action 1:14-cv-1900). The Court issued a remand order on July 10, 2015, based on the report and recommendation of U.S. Magistrate Judge Schwab. (Tr. 450-84). Judge Schwab found that the ALJ did not properly address the medical source opinion of Plaintiff's treating psychiatrist, Dr. Mukherjee. She also ordered that the credibility of the testimony of McCammon and his wife be reassessed. (Tr. 450-484). On October 6, 2016, the ALJ found Plaintiff not disabled within the meaning of the Act. (Tr. 420-39). Plaintiff sought review of the unfavorable decision, which the Appeals Council denied on August 14, 2017, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner of the Social Security Administration. (Tr. 330-36).

On September 19, 2017, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal a decision of Defendant denying social security benefits. (Doc. 1). On February 1, 2018, Defendant filed an answer and an administrative transcript of proceedings. (Doc. 9, 10). On March 19, 2018, Plaintiff filed a brief in support of the appeal. (Doc. 12 ("Pl. Br.")). On April 16, 2018, Defendant filed a brief in response. (Doc. 14 ("Def. Br.")). On April 27, 2018, Plaintiff filed a reply. (Doc. 15 ("Reply")).

## III.    Background

Plaintiff was born on December 12, 1961 and thus is classified by the regulations as a "person approaching advanced age" at the time of the ALJ's October 6, 2016 decision and was

---

[1] Disability insurance benefits are paid if the individual is disabled by the last date that a claimant meets the requirements of being insured. See 42 U.S.C. § 423(a)(1)(A), (c)(1).

two months from failing within the category of "person of advanced age." (Tr. 33, 212, 352); 20 C.F.R. §§ 404.1563(d)(e), 416.963(d)(e).

## IV.    Issues on Appeal

On appeal, Plaintiff argues the ALJ erred by: (1) "failing to find that [Plaintiff's] mental health condition meets Section 12.03.C.2 of the Listings for schizophrenic and psychotic disorders;" (2) "assigning limited weight to the opinions of long-term treating psychiatrist, Dr. Mukherjee;" (3) "failing to adequately account for [Plaintiff's] hand tremors and pacing in her RFC assessment," and; (4) "according little weight to the testimony of [Plaintiff] and his wife" (Pl. Br. at 14).

## V.    Analysis

### A.    Handling Limitation

Plaintiff argues that the ALJ's determination of the RFC failed to include limitations to address his hand tremors. (Pl. Br. at 14). The undersigned concludes that the ALJ erred at Step Two in finding that Plaintiff's medication-induced movement disorder (hand tremors) was not a medically determinable impairment. "[A] disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38–39 (3d Cir. 2001) (internal quotation marks and citations omitted); accord 42 U.S.C. § 423(d)(1)(A). A "medically determinable" impairment is one that results from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Scipio v. Comm'r of Soc. Sec., 611 F. App'x 99, 101–02 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(3) (effective since November 2, 2015)); 20 C.F.R. § 404.1508 (DIB) (effective until March 26, 2017); 20 C.F.R. § 416.908 (SSI) (effective until March 26, 2017). Furthermore, a medically determinable impairment must be established by

Page 5 of 18

an acceptable medical source enumerated in 20 C.F.R. § 404.1513 (DIB); 20 C.F.R. § 416.913

(SSI) (effective September 3, 2013 to March 26, 2017) ("We need evidence from acceptable

medical sources to establish whether you have a medically determinable impairment(s)"). On May

29, 2012, Dr. Mukherjee opined that Plaintiff experienced "medication induced movement." (Tr.

295). There is no other medical opinion on the record to contradict this diagnosis and no medical

opinion in the record to establish the severity of the limitation and its impact on Plaintiff's ability

to work.

The error at Step-Two was not harmless given that the ALJ failed to appropriately account

for the hand tremors in formulating the RFC. With regard the hand tremors, at Step Two the ALJ

wrote:

> [Plaintiff] does not allege any impairment of his physical functioning, and after a
> thorough review of the record as a whole, the undersigned [ALJ] does not find any
> medically determinable physical impairment that could be expected to cause any
> limitation in the claimant's ability to perform basic work activities …
>
> [Plaintiff] also reported that his hands shake when he is nervous, which caused
> difficulty in the past when he was working as a welder; at the hearing, [Plaintiff]
> and his counsel alleged that these "tremors" were a medication side effect. In his
> application paperwork, [Plaintiff] himself reported only constipation as a side effect
> of his prescribed mental health medications, then later stated he suffered no
> medication side effects, and, most recently during the April 2016 hearing, stated
> that he continues to suffer slight constipation as a medication side effect and to have
> hand tremors. The records of [Plaintiff's] prescribing provider document
> medication-induced movement disorder, specifically hand tremor, as a side effect
> of his prescribed medication, as well as constipation. However, despite these
> alleged side effects, the undersigned specifically notes that [Plaintiff] has continued
> to take the offending medications on a chronic basis throughout the entire period at
> issue, strongly suggesting that the ameliorative benefits of the medications
> outweigh the impact of any side effects or that the side effects themselves are quite
> minor. Consistent with this line of reasoning, the undersigned notes that [Plaintiff]
> did not allege any difficulty lifting, carrying items, reaching, or otherwise using his
> hands on a sustained basis due to tremors, noting only that his writing is "not the
> best" and that welding is a problem …
>
> The undersigned has made a slight accommodation in the above residual functional
> capacity assessment for tremor as a medication side effect, to the extent that
> [Plaintiff] would not be capable of welding in a work environment, but finds no

persuasive evidence for further functional limitations due to medication side effects.

(Tr. 343, 347-48). In the October 2016 decision the ALJ implies that because Plaintiff did not originally allege any physical limitations, Plaintiff's subsequent allegation of hand tremors does not constitute a physical limitation or that the allegation of experiencing hand tremors is undermined. (Tr. 343, 347-48). The ALJ was on notice of the hand tremors through the medical records, Plaintiff's request for hearing, and testimony. (Tr. 31, 45-46, 81, 196, 284, 368, 387-88). A month after Plaintiff filed the disability application Plaintiff stated that his hand tremors prevented him from welding. (Tr. 196). In response to the February 2012 Function Report question "How do your illnesses, injuries, or conditions limit your ability to work?" Plaintiff responded "Welder – hands shake making welds look bad. Being around a lot of people makes me nervous, hard to function in a work environment." (Tr. 196). In the April 2012 psychological consultative evaluation, Dr. Edward Yelinek, Ph.D. wrote "'With the way my hands shake, it will be hard to get a job as a welder. I get real nervous. I'm nervous right now.' [Plaintiff] indicated that . . . due to the unsteadiness of his hands, his welding is also unsatisfactory." (Tr. 284). On May 10, 2012, Plaintiff filed a Hearing Request stating that his conditions made his hand shake and made it difficult to weld, he experienced difficulty concentrating and experienced difficulty being around people made him nervous. (Tr. 81). Plaintiff's early allegations of a medically determinable physical hand limitation served sufficient notice to trigger further development of the physical impairment. See 20 C.F.R. §§ 404.1615, 416.1015 (effective: October 19, 2015 to October 23, 2016) ("In a case where there is evidence of mental and nonmental impairments and a qualified psychologist serves as a psychological consultant, the psychologist will evaluate only the mental impairment, and a physician will evaluate the nonmental impairment").

During the July 2013 hearing, Plaintiff's attorney stated that Plaintiff had been on anti-

psychotic medication since his initial psychiatric hospitalization and the medication caused hand tremors, which interfered with his ability to perform the work as a welder. (Tr. 32). During the July 2013 hearing the following exchange occurred between the initial ALJ and Plaintiff:

> ALJ: And can you tell the Judge a little bit about the hand tremors that you have?
> Plaintiff: Yeah. It's hard for me to weld because my hands tremor and it puts marks on the weld, and most places don't like that.
> ALJ: And has your doctor told you why that is?
> Plaintiff: It's just part of the medication and things.

(Tr. 45-46). During the April 2016 hearing Plaintiff testified that he still experienced hand tremors, that the hand tremors happen when he welds, and when he gets nervous, when he holds a fork or spoon to eat, but did not affect his writing. (Tr. 368, 387-88). During the April 2016 hearing the following exchange occurred between the initial ALJ and Plaintiff:

> ALJ:    …are you able to pinch things, pick up coins, grasp or hold a pen or pencil, silverware? Never – you don't drop things –
> Plaintiff: No.
> ALJ:  --as a result of these tremors?
> Plaintiff: No.
> ALJ: And what about things that you're holding? Or if you go to turn something over, do you lose it because of your tremors, or - -
> Plaintiff: No
> ALJ: --drop things because of your tremors? How often do you have the tremors?
> Plaintiff: I – every – all – I guess all of the time. Some.
> ALJ: I'm – how – I'm not sure how to – how to – how would you describe them?
> Plaintiff: It's just that I get nervous.
> ALJ: Okay. Right now you're holding your hand out, and I'm not really seeing anything. Is there –
> Plaintiff: It's just some. When I get nervous, when I'm trying to weld or something, it really – is when it -- happened the -- happens the most.

(Tr. 388-89). The record contains no medical assessment of grip or hand strength or medical observation of what Plaintiff could do with his hands or any medical opinion regarding the extent of Plaintiff's handling limitation. The absence of an objective medical opinion regarding the extent of this physical limitation is prejudicial error. The United States Department of Labor, Selected Characteristics of Occupations defines: (1) "handling" as "[s]eizing, holding, grasping, turning, or

otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch or shift automobile gears"; (2) "fingering" as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling;" (3) "reaching" as "Extending hand(s) and arm(s) in any direction;" (4) "lifting" as "[r]aising or lowering an object from one level to another (includes upward pulling);" and, (5) "carrying" as "[t]ransporting an object, usually holding it in the hands or arms or on the shoulder." Physical Demands, SCODICOT Appendix C. In the April 2016 decision the ALJ states "[Plaintiff] did not allege any difficulty lifting, carrying items, reaching, or otherwise using his hands on a sustained basis due to tremors, noting only that his writing is 'not the best' and that welding is a problem." (Tr. 347-48). The ALJ's questions during the April 2016 hearing and decision conflates Plaintiff's carrying, reaching, lifting and fingering abilities with handling and erred in using Plaintiff's abilities in carrying, reaching, lifting, and fingering to support an adverse finding regarding Plaintiff's abilities with handling.

ALJ's failure to find Plaintiff's hand tremors as a medically determinable impairment and address the impact of the hand tremors as a physical limitation is not harmless error given that Plaintiff represented that the condition impacted his job performance. See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504, n3 (3d Cir. 2009). The Court in Diaz cited to Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) noting that remand was appropriate for the ALJ to "adequately develop the record and, if necessary, obtain expert opinions" because "the record does not indicate that the ALJ properly considered the aggregate effect of all [claimant's] ailments." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 at n3 (3d Cir. 2009) (articulating that an ALJ must be on notice of a

medical condition through the medical records and claimant must argue that the condition impacted job performance).[2]

The ALJ writes that Plaintiff's hand trembling limitation is incorporated in the RFC as a non-exertional limitation[3] of "no welding as part of the occupation," however, the elimination of a prior occupation is already contemplated in the assessment of whether Plaintiff is able to perform "past relevant work" pursuant to 20 CFR 404.1565. In the hypothetical presented to the Vocational Expert, the ALJ stated "no handling problems other than welding. So, let's just say no jobs welding." (Tr. 411). According to the Dictionary of Occupational Titles (DICOT), the non-exertional abilities encompassed in welding include: (1) reaching constantly (2/3 or more of the time); (2) constant handling; (3) fingering frequently (1/3 to 2/3 of the time); (4) level 3 (middle 1/3 of the Population) for motor coordination; (5) level 3 for finger dexterity, and; (6) level 3 for manual dexterity. DICOT 810.384-014, 1991 WL 681572. Given Plaintiff's RFC precludes welding due to a hand tremble, it is unclear which other hand-related attributes of welding is precluded. For these reasons, remand is recommended.

### B.   Weight to Medical Opinions

Plaintiff argues that the ALJ erred in favoring the non-examining consultative April 2012 opinion of Dr. Glover and April 2012 examining consultative opinion of Dr. Yelinek (Tr. 284-89)

---

[2] On March 27, 2017, the regulations changed to require a State Agency consultant in all cases alleging mental impairments. See 20 C.F.R. § 404.1616 (e). "In a case where there is evidence of both physical and mental impairments, the medical consultant will evaluate the physical impairments in accordance with paragraph (a) of this section, and the psychological consultant will evaluate the mental impairment(s) in accordance with paragraph (c) of this section."

[3] "Handling" is considered a nonexertional limitation. Titles II & Xvi: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985) ("Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle)").

and allocating limited weight to the opinions from Plaintiff's treating psychiatrist, Dr. Mukherjee. (May 2012 opinion, Tr. 298; October 2015 opinion, Tr. 612); (Pl. Br. at 20-25).

In this instance, the ALJ erred in allocating greater weight to the April 2012 opinions of Drs. Yelinek and Glover who did not have the benefit of reviewing the May 2012 and October 2015 opinions from Dr. Mukherjee. The opinions of Dr. Mukherjee encompass interpretations of several years of treatment involving many medication and dosage changes, and substantive evaluations of Plaintiff based on observations made in-person, and Plaintiff's medical history. (Tr. 295-322, 477-485, 609-643). The presence of a medical opinion in the record that supports the ALJ's denial does not automatically establish that substantial evidence supports the denial, especially when there are subsequent medical opinions after a significant passage of time. Sections 404.1519 and 416.919 of Title 20 of the Code of Federal Regulations directly address when the ALJ may secure medical opinion evidence: when there is an unresolved conflict, or the evidence is insufficient to make a determination. 20 C.F.R. §§ 404.1519, 416.919. The May 2012 and October 2015 opinions from Dr. Mukherjee created a conflict in the medical opinion evidence that was not resolved by the ALJ's lay interpretation of the opinions. See 20 C.F.R. §§ 404.1519, 416.919; Austin v. Colvin, No. 1:13-CV-02878-GBC, 2015 WL 4488333 (M.D. Pa. July 23, 2015) ("passage of time is relevant when it requires the ALJ to undertake a significant independent review of probative, non-cumulative objective evidence") (internal citations omitted); see also Staudt v. Colvin, No. 1:13-CV-2904, 2015 WL 1605574, at *10 (M.D. Pa. Apr. 9, 2015).In May 2012, Dr. Mukherjee opined that although Plaintiff's psychosis was under control, Plaintiff continued to experience significant anxiety. (Tr. 296). Dr. Mukherjee explained that the medication used to control the psychosis results in a side-effect of tremors. (Tr. 296). Dr. Mukherjee opined that Plaintiff had marked difficulty: (1) maintaining attention for two-hour segments; (2) completing a normal workday and workweek without interruptions from

psychologically based symptoms, and; (3) performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 298). In October 2015, Dr. Mukherjee opined Plaintiff experienced moderate difficulty: (1) maintaining attention for two-hour segments; (2) completing a normal workday and workweek without interruptions from psychologically based symptoms, and; (3) performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 612).

The April 2012 Consultative Examination supports Dr. Mukherjee's opinion regarding anxiety, attention, and concentration. (Tr. 284, 86). In the April 2012 CE opinion, Dr. Yelinek noted that Plaintiff became noticeably anxious upon entering the room and believing he lost his car keys and then realized he left the keys with his wife. (Tr. 284). Dr. Yelinek opined that Plaintiff's attention and concentration were "poor" and noted that Plaintiff was unable to perform serial of 7s nor spell WORLD backwards. (Tr. 286-87). In Dr. Glover's April 2012 Psychiatric Review Technique (PRT), he summarized part of Dr. Yelinek's findings. (Tr. 69). However, Dr. Glover failed address Dr. Yelinek's opinion that Plaintiff demonstrated poor concentration and attention (Tr. 286-87), when Dr. Glover opined that Plaintiff experienced "moderate" difficulties in maintaining concentration, persistence or pace, and did not offer any explanation or citation to supporting documentation for this opinion. (Tr. 67). There is also no record contradicting Plaintiff's statement that he was laid off from his previous job because he did not unload trucks quickly enough, which may be indicative of the attention and concentration limitations represented in Dr. Mukherjee's opinions. (Tr. 284-85). There is no medical expert on the record that has reviewed the treating physician's May 2012 or October 2015 opinions to support discrediting Dr. Mukherjee's opinions regarding pace, concentration, and attention within the work setting.

The ALJ afforded little weight to Dr. Mukherjee's opinions stating:

> [t]he undersigned finds limited support from Dr. Mukherjee's own treatment records in support of his opinion statements. Some of the records from Dr. Mukherjee's office lack detail and are not entirely legible, making them of little value in assessing internal support for the doctor's opinion; the legible, typed records clearly document stable presentation both by subjective report and objective mental status evaluation, with generally intact cognition, orientation, behavior, speech, and thought content, inconsistent with marked functional loss. Further, during most appointments, the claimant reported that he was doing good and that on the rare occasions when the claimant reported increasingly severe symptoms, Dr. Mukherjee responded only by adjusting the claimant's medications, a very conservative course of treatment that is inconsistent with the marked functional loss noted in the opinion statement. The undersigned also notes that, in his treatment notes relevant to the period at issue, Dr. Mukherjee assigned Global Assessment of Functioning (GAF) scores ranging from 60 to 80.

(Tr. 350) (internal citations omitted). The ALJ's reliance of Plaintiff's "stable presentation," "intact cognition, orientation, behavior, speech, and thought content," is insufficient to support rejecting the treating physician's opinion. See Jones v. Colvin, 2016 WL 738065, at *9–12 (W.D. Pa. Feb. 25, 2016). Moreover, observations of Plaintiff's "stable presentation," "intact cognition, orientation, behavior, speech, and thought content" do not contradict the treating physician's conclusion that Plaintiff has limitations in pace and production requirements of fulltime employment. See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("the work environment is completely different from home or a mental health clinic . . . [a treating doctor's] observations that [a patient] is 'stable and well controlled with medication' during treatment does not support the medical conclusion that [the patient] can return to work."); accord Jones v. Colvin, 2016 WL 738065, at *9–12 (W.D. Pa. Feb. 25, 2016). Dr. Mukherjee's opinions should not have been "supplanted by an inference gleaned from treatment records reporting on [Plaintiff] in an environment absent the stresses that accompany the work setting." Morales, 225 F.3d at 319; accord Jones v. Colvin, 2016 WL 738065, at *9–12 (W.D. Pa. Feb. 25, 2016). As the Court in Jones v. Colvin explained:

For the same reasons, a doctor's assessment of a patient during an examination does not necessarily contradict a seemingly more restrictive statement about the patient's "ability to function in a work setting." [Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 356 (3d Cir. 2008)]. The Court of Appeals has expressly "admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work." Id. (citing Morales v. Apfel, 225 F.3d 310, 319).

Jones v. Colvin, 2016 WL 738065, at *9–12 (W.D. Pa. Feb. 25, 2016).The Court finds that the ALJ's dismissal of the treating physician's opinions were based on the ALJ's lay interpretation of medical records and was in error. See Jones v. Colvin, Acting Comm'r of Soc. Sec., Defendant., No. 2:15-CV-01169-TFM, 2016 WL 738065, at *8 (W.D. Pa. Feb. 25, 2016). "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Id. at 319.

### C.    Past Relevant Work and Production Limitation

Plaintiff argues that the ALJ's determination of the RFC failed to include limitations to address Plaintiff's need for unscheduled breaks due to his pattern of pacing when he becomes anxious. (Pl. Br. at 14, 25-26). In the October 2016 decision, the ALJ noted Plaintiff "worked briefly after the alleged onset date in November and December 2011. While the earnings associated with this work activity . . . rise to the level of substantial gainful activity, this work was an unsuccessful work attempt, as this less than three-month period of work activity was preceded by a significant break in work activity and ended due to [Plaintiff's] impairments." (Tr. 342). In the 2016 Decision, the ALJ does not identify what impairments caused the end of the truck-unloading

work (Material Handler). (Tr. 342). Nor does this finding address the underlying basis for which Plaintiff testified that he was terminated from the job, which was due to his inability to meet production requirements. (Tr. 369-70). Plaintiff testified that his last job was terminated due to his inability to meet the production requirements and testified that he has a pattern of pacing as a psychologically-based symptom. (Tr. 369-370, 376-79, 398).

The ALJ determined that Plaintiff's prior work loading and unloading trucks at K-mart qualified as "Material Handler." (Tr. 352). The VE testified that someone with Plaintiff's RFC would be precluded from Material Handler as a past job due to Material Handler being classified as skilled work with an SVP of 3 and Plaintiff's RFC was for unskilled work. (Tr. 410-413). However, the VE testified that while "material handler" was a SVP of 3 due to the skills it would take to organize how to fit products, if Plaintiff's K-Mart job was described as someone who loaded and unloaded trucks, it would be equal to a material handler with an SVP of 2 and that an individual would be able to perform the job as Plaintiff actually performed with the given RFC (with the given limits, tolerances or standards, directing, controlling, planning activities of others, influencing people's opinions, attitudes, judgments, consist of repetitive short-cycle tasks in within one month). (Tr. 413-14).

When Plaintiff's attorney presented a hypothetical of a 15% percent reduction of productivity or the need for unscheduled breaks for up to an hour per day, the Vocational Expert opined that such limitations would prevent employment. (Tr. 415). Plaintiff's attorney then asked the VE the following question "So if you assume that he was not able to handle the pace of that Material Handler position at the SVP-2 level, which is in fact what happened, how would that lack of ability to maintain productivity and pace affect the other jobs that you've identified?" (Tr. 414). However, this is the issue that not answered and remained unresolved by the ALJ. The VE testified that Plaintiff could perform his prior work unloading trucks as "material handler" as performed

with an SVP of 2 (Tr. 413-14), and the ALJ still found that Plaintiff was unable to perform this job due to Plaintiff's impairments. Plaintiff testified that he was laid off from the truck unloading job due to his inability to keep up with production requirements, and the ALJ had not explained the implicit rejection of a production limitation while also seeming to reject the VE testimony that Plaintiff was capable of past truck unloading work as performed. The VE testified that an individual with Plaintiff's RFC would be able to perform the material handler position as Plaintiff performed it, however, the ALJ concluded that this material handler job was a failed worked attempt, leaving the production limitation as the only explanation to support why Plaintiff ended the work. The ALJ failed to adequately address the rejection of a production limitation from the RFC.

The ALJ also erred in determining that Plaintiff's unsuccessful work attempt also qualified as past relevant work. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (defining past relevant work as requiring work to qualify as substantial gainful activity); 20 C.F.R. § 416.974(c)(1) (in identifying an unsuccessful work attempt, stating "work you have done will not show that you are able to do substantial gainful activity if, after working for a period of 6 months or less, you were forced by your impairment to stop working....") (quoted language remains the same after the November 2016 amendments to the regulation); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221 n.1 (9th Cir. 2009) (concluding that, because plaintiff's stint as a grocery clerk was "an unsuccessful work attempt," it did not amount to "substantial gainful activity" and therefore "cannot be considered 'past relevant work'"); accord McNeely v. Comm'r of Soc. Sec., No. 217CV00335KJMKJN, 2019 WL 325270, at *1 (E.D. Cal. Jan. 25, 2019). Remand is necessary for the ALJ to address this error.

### D.    Rejection of Lay Statements

The ALJ erred by giving little weight to the lay statement from Mrs. McCammon on the

basis, in part, that "the credibility of reports from the family members and friends of claimants must be carefully balanced against the obvious desire of such persons to help the claimant succeed in their claim for disability benefits." (Tr. 351-52). Observations of a plaintiff made in third party lay statements are valid sources for an ALJ to consider.  See e.g., 20 C.F.R. § 404.1513(e)(2) (effective September 3, 2013 to March 26, 2017); SSR 06-03p (Rescinded on March 27, 2017, by Federal Register Notice Vol. 82, No. 57, page 15263); SSR 16-3p.  Social Security Ruling 06-03p, states that:

> [W]e may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to . . . Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers. . . . [I]nformation from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.
>
> . . . .
>
> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

SSR 06-03p; accord Zirnsak v. Colvin, 777 F.3d 607, 612-13 (3d Cir. 2014). Additionally, Social Security Ruling 16-3p, states that:

> Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include public and private agencies, other practitioners, educational personnel, non-medical sources such as family and friends . . .

SSR 16-3p.  It is error for the ALJ to disregard these third-party statements on the basis that such statements were automatically deemed untrustworthy due to the relationship with Plaintiff, when

such relationships are cited in regulations and rulings as being the types of sources that must be considered.  See SSR 16-3p; SSR 06-03p.

## VI.      Recommendation

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.      The decision of the Commissioner of Social Security denying Plaintiff's benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, obtain a physical consultative examination, a psychological and physical medical expert review of the updated record with opinions as to the severity of any mental and physical impairments, conduct a new administrative hearing and appropriately evaluate the evidence.

2.      The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

DATED: May 15, 2019                                    _____s/Gerald B. Cohn_____
                                                       GERALD B. COHN
                                                       UNITED STATES MAGISTRATE JUDGE